IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| MARK PATTERSON, | ) | Case No. 4:14-cv-00274-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YONGKANG GOLDEN SUNSHINE OUTDOOR PRODUCT CO., LTD., | ) ) | ORDER FOR ENTRY OF JUDGMENT |
| | ) | |
| Defendant. | ) | |

Plaintiff Mark Patterson was injured in July 2012 when he reclined in a chair, it broke, and he fell to the ground. In May 2014, he filed suit in state court against the chair's alleged American retailer, Canadian distributor, and Chinese manufacturer. He asserted three counts: Product Liability–Manufacturing Defect–All Defendants (Count I); Design Defect–All Defendants (Count II); and Res Ipsa Loquitur–All Defendants (Count III). [ECF No. 1-3]. In July 2014, the action was removed to this Court; diversity jurisdiction was the basis. [ECF No. 1].

In September 2015, the Clerk of Court entered default against the Chinese manufacturer, Defendant Yongkang Golden Sunshine Outdoor Product Co., Ltd. ("Yongkang"), the manufacturer having failed to plead, and this failure having been shown by affidavit. [ECF Nos. 36 (Clerk's Entry of Default); 35 (Proof of Service); 34 (Motion for Default)]. In motions filed in January and February 2016, Patterson dismissed all claims against the retailer, Menard, Inc., and the distributor, Pelican Creations, Inc. [ECF Nos. 64; 58]. In the latter motion, Patterson requested

that a hearing on damages be scheduled, so that default judgment could be entered. [ECF No. 64 at 1–2; *see also* ECF No. 40 (requesting a hearing on damages)].[1]

That hearing was held on June 22, 2016. [*See* ECF No. 76]. Patterson testified; Yongkang did not appear. Before the hearing, Patterson filed an Affidavit of Thomas J. Wicks, D.C., [ECF No. 74], along with Wicks's curriculum vitae, [ECF No. 74-1], a letter from Wicks to Patterson's counsel dated June 18, 2013, [ECF No. 74-2], and billing statements from Wicks to Patterson, covering the period from July 30, 2012, to March 24, 2016, [ECF No. 74-3]. In addition, Patterson filed a summary of Patterson's past medical expenses, showing a total of $9,813.59 in past medical expenses. [ECF No. 75]. At the conclusion of the hearing, Patterson's counsel requested total damages of $72,013.62, a figure composed of $9,813.62 in past medical expenses; $17,200 in future medical expenses; $15,000 in past pain and suffering; $15,000 in future pain and suffering; $7,500 in past loss of functioning; and $7,500 in future loss of functioning. Patterson does not request damages for lost wages or future earnings. Because the Court concludes that Patterson has proved his damages by a preponderance of the evidence, the Court directs the entry of default judgment against Yongkang and awards Patterson the amounts requested.

"Upon default, the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (citation omitted). Although "it is of course appropriate for a district court to enter a default judgment when a party fails to appropriately respond in a timely manner," "it is incumbent upon the district court to ensure

---

[1] The Court construes ECF No. 40 as a Motion for Entry of Default Judgment.

that 'the unchallenged facts constitute a legitimate cause of action' prior to entering final judgment." *Marshall v. Baggett*, 616 F.3d 849, 852–53 (8th Cir. 2010) (citation omitted).

In brief, the Amended Petition at Law and Jury Demand alleges the following facts, many of which were confirmed by Patterson's testimony at the hearing. Patterson alleges that in June 2012, his children purchased an Excel Anti-Gravity Chair from a store operated by Menard in Clive, Iowa. [ECF No. 11 at 2]. They then presented him the chair as a Father's Day gift. *Id.* On July 22, 2012, while in Cherokee, Iowa, Patterson removed the chair from the box, unfolded it, and sat down. *Id.* When he attempted to recline the chair, it broke and he toppled backwards to the ground. *Id.* Yongkang manufactured the chair, which had a manufacturing or design defect, which caused Patterson's injuries. *Id.* at 2–3. These unchallenged facts constitute a legitimate cause of action. *See Marshall*, 616 F.3d at 852–53; *Murray*, 595 F.3d at 871. As already mentioned, Patterson asserts claims of manufacturing defect, design defect, and res ipsa loquitur. [ECF No. 11]. With this in the background, the Court turns to the issue of damages.

## II.  DISCUSSION

### *A. Damages*

"[A] default judgment cannot be entered until the amount of damages has been ascertained." *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000) (citation and internal quotation marks omitted). Ascertaining the amount of damages requires proof by a preponderance of the evidence. *See Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818–19 (8th Cir. 2001) (affirming district court decision that had concluded plaintiff failed to prove damages by a preponderance of the evidence). The district court has the discretion to determine the amount of damages to be included in a default judgment by an evidentiary hearing, detailed affidavits, or documentary evidence. *Stephenson v. El-Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008);

*Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) ("Damages may be awarded only if the record adequately reflects the basis for award via 'a hearing or a demonstration by detailed affidavits establishing the necessary facts.'"); *accord Fustok v. ContiCommodity Servs.*, Inc., 873 F.2d 38, 40 (2d Cir. 1989); *Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Here, as noted above, the Court heard the testimony of Patterson, and accepted the detailed affidavit of Dr. Wicks (as well as its supporting documentation) and summary of medical expenses supplied before the hearing.

Patterson has carried his burden to show he is entitled to past and future medical expenses. *See Everyday Learning Corp.*, 242 F.3d at 818–19 (applying the burden of proof). According to Patterson's testimony at the hearing,[2] he was participating in the Register's Annual Great Bike Ride Across Iowa—known more commonly as RAGBRAI—when he first used the chair on July 21, 2012. When he sat in the chair, the chair snapped and he fell backwards, landing on his head and neck. Besides having the wind knocked out of him, Patterson at that time experienced no additional symptoms. He slept as normal and rode his bike the next day until shooting pain up his neck and head forced him to stop riding. A couple days afterward, Patterson visited a chiropractor in Webster City, Iowa, and on July 30, 2012, saw Dr. Wicks, a chiropractor whom Patterson had seen before July 2012. Dr. Wicks, according to his affidavit and billing statements, has treated Patterson approximately every three weeks since the July 30 visit. Patterson has also seen a Dr. Abernathy, a surgeon practicing in Cedar Rapids, Iowa, who advised that surgery was possible but would not be helpful. Dr. Abernathy recommended that Patterson undergo ongoing treatment with Dr. Wicks.[3]

---

[2] The Court finds Patterson credible.

[3] Before being injured by the Yongkang chair in 2012, Patterson in 2007 had a spinal fusion in his neck and was in two motor vehicle accidents, one in 2010 and one in 2008. Neither accident

The summary of medical expenses submitted by Patterson indicates that his past medical expenses are $9,813.62, the total, demonstrated on a spreadsheet, of $8,686.53 paid by insurance, $1,113.84 paid by Patterson himself, and $13.25 in balances owed. [ECF No. 75 at 1–3; *see also* ECF No. 74-3 at 1–10 (billing statements from Dr. Wicks)]. In addition, according to his affidavit, Dr. Wicks will need to see Patterson approximately every three weeks for the foreseeable future, and probably for the balance of Patterson's life. Patterson, who is 62, will thus need to see Dr. Wicks approximately 20 times a year for 20 years (according to mortality tables). Dr. Wicks bills $43 per visit, which totals over time $17,200 ($43/visit x 20 visits/year x 20 years). The Court thus finds that Patterson should be awarded $9,813.62 in past medical expenses and $17,200 in future medical expenses.

Patterson has also carried his burden to show he is entitled to damages for past and future loss of functioning and past and future pain and suffering. *See Everyday Learning Corp.*, 242 F.3d at 818–19. Besides working as a salesman, Patterson is a reserve officer for two police departments. He routinely trains for his work as a police officer. He works very hard, he testified, at staying fit, for instance riding in RAGBRAI and otherwise cycling. But since the fall in the chair, he has experienced varying degrees of pain daily. As noted above, he experiences numbness and tingling frequently, as well as soft tissue knots and shooting pain down his skull and arms. Although treatment has helped, he continues to suffer from shooting pain once or twice per month,

---

affected the spinal fusion. An MRI in 2010 confirmed that his neck was normal. Patterson testified that the symptoms he experiences now are different than those that he suffered before the chair failed. According to Patterson, he has shooting pain, as well as numbness and tingling, none of which he suffered before being injured by the chair. Beforehand, he experienced symptoms in his cervical spine; he now experiences them in his thoracic spine. Finally, in his affidavit, Dr. Wicks, who treated Patterson before July 21, 2012, declares that Patterson's symptoms are "strikingly different than his complaints and treatments before July 21, 2012." [ECF No. 74 at 1]. Based on this evidence, the Court concludes that the damages awarded were caused by the failure of the Yongkang chair on July 21, 2012.

corresponding roughly with his visits to Dr. Wicks. And the pain has affected him. A weightlifter, Patterson is no longer able to lift heavy weights. He now lifts only lighter weights. In addition, the injuries he suffered now cause him to need to reposition his body frequently. And although he has continued serving as a reserve police officer, the injuries required him to adjust his work. Based on the evidence submitted, the Court finds that Patterson should be awarded $15,000 in past pain and suffering; $15,000 in future pain and suffering; $7,500 in past loss of functioning; and $7,500 in future loss of functioning.

In sum, the Court (again) awards Patterson $72,013.62: $9,813.62 in past medical expenses; $17,200 in future medical expenses; $15,000 in past pain and suffering; $15,000 in future pain and suffering; $7,500 in past loss of functioning; and $7,500 in future loss of functioning.

### III. CONCLUSION

Plaintiff Mark Patterson's Motion for Entry of Default Judgment [ECF No. 40] is GRANTED. The Court orders Default Judgment to be entered in the amount of $72,013.62 in favor of Plaintiff Mark Patterson and against Defendant Yongkang Golden Sunshine Outdoor Product Co., Ltd. Post-judgment interest on the entire award shall accrue from the date of the entry of judgment at the rate identified in 28 U.S.C. § 1961.

IT IS SO ORDERED.

Dated this 1st day of July, 2016.

_____
STEPHANIE M. ROSE
UNITED STATES DISTRICT JUDGE